## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES E. SUESSMANN and<br>ANNA E. NEWMAN,<br><br>               Plaintiffs,<br><br>    v.<br><br>E.I. DU PONT DE NEMOURS & COMPANY;<br>THE CHEMOURS COMPANY;<br>THE CHEMOURS COMPANY FC, LLC;<br>THE 3M COMPANY;<br>ASAHI KASEI AMERICA, INC.;<br>AGC CHEMICALS AMERICA, INC.;<br>BASF; and<br>JOHN DOE ENTITIES #1-10,<br><br>               Defendants. | Civil Action No. _____<br><br><br>**NOTICE OF REMOVAL** |

Defendant 3M Company ("3M"), by undersigned counsel, hereby gives notice of the removal of this action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, from the Superior Court of New Jersey, Bergen County, Law Division, to the United States District Court for the District of New Jersey. As grounds for removal, 3M alleges as follows.

## PRELIMINARY STATEMENT

1.      Plaintiffs James E. Suessmann and Anna E. Newman seek to hold 3M and other Defendants liable based on their alleged conduct in designing, manufacturing, or selling per- and polyfluoroalkyl substances ("PFAS"), including perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS"), and PFAS-containing products. Plaintiffs further allege that Defendants' PFAS have contaminated drinking water in New Jersey, that Mr. Suessmann drank PFAS-contaminated water at various locations in New Jersey, including in the Borough of

Hawthorn and the Borough of Ho-Ho-Kus, and that ingestion of PFAS caused Mr. Suessmann's testicular cancer and other medical conditions from which he allegedly suffers.

2.      At least some of the PFAS that plausibly gives rise to Plaintiffs' claims was released by the use, storage, or disposal of PFAS-containing aqueous film-forming foam ("AFFF") that was manufactured for and sold to the U.S. military and other users by a select group of suppliers (including 3M) in accordance with the military's rigorous specifications ("MilSpec"). As discussed further *infra*, MilSpec AFFF use at the Picatinny Arsenal and Teterboro Airport plausibly contributed to the alleged contamination of drinking water in the Boroughs of Hawthorne and Ho-Ho-Kus that purportedly caused Plaintiffs' injuries. Actions filed by the Borough of Hawthorne and  by the Borough of Ho-Ho-Kus to recover for alleged AFFF contamination of their water supplies are currently pending in the *In re Aqueous Film-Forming Foams (AFFF) Products Liability Litigation* multi-district litigation ("AFFF MDL") in the District of South Carolina.

3.      Under the federal government contractor defense recognized in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), 3M is immune to tort liability for its design and manufacture of MilSpec AFFF and its provision of warnings for the product. Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), 3M is entitled to remove this action to have its federal defense adjudicated in a federal forum. *See Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 810-15 (3d Cir. 2016). Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008); *see also Albritton v. A Clemente, Inc.*, 2023 WL 2447422, at *3-8 (D.N.J. Mar. 10, 2023) (Hillman, J.) (holding that Defendant E.I. Du Pont de Nemours and Company properly removed PFAS case to federal court based on federal officer jurisdiction because plaintiffs sought

to hold Du Pont liable in part for products manufactured for the federal government and Du Pont had asserted a government contractor defense under *Boyle*); *accord Baker v. A. Clemente, Inc.*, 2023 WL 2447422, at *2-7 (D.N.J. May 3, 2023) (Hillman, J.); *Curiale v. A Clemente, Inc.*, 2023 WL 4362722, at *1-7 (D.N.J. July 5, 2023) (Hillman, J.); *N.J. Dep't of Env't Prot. V. E.I. Du Pont de Nemours & Co.*, 2020 WL 2611539, at *2-7 (D.N.J. May 22, 2020) (Hillman, J.).

## BACKGROUND

4.     This action was filed on July 27, 2023, in the Superior Court of New Jersey, Bergen County, Law Division, bearing Docket No. BER-L-003967-23. *See* Summons & Complaint (Exhibit A) ("Compl.").

5.     Plaintiffs generally allege that Defendants, including 3M, have designed, manufactured, sold, and/or released PFAS and PFAS-containing products. *See, e.g.*, Compl. ¶¶ 4, 22, 54, 120, 128, 132, 143-153.

6.     Plaintiffs allege that PFAS releases have contaminated drinking water at certain locations in New Jersey, that Mr. Suessmann drank allegedly PFAS-contaminated water in (among other locations in New Jersey) the Boroughs of Hawthorn and Ho-Ho-Kus, and that such exposure to PFAS was the cause of Mr. Suessmann's testicular cancer and other medical conditions. *Id.* ¶¶ 1-5, 10, 69, 78.

7.     Plaintiffs attach to their Complaint a copy of the Statewide PFAS Directive issued by New Jersey Department of Environmental Protection ("NJDEP"), *see* Compl. Ex. A, and allege based on the Directive that NJDEP "believes [3M] to be responsible for the significant contamination of New Jersey's natural resources," Compl. ¶ 48. The Statewide PFAS Directive explains that PFOS is used in AFFF; that 3M manufactured AFFF for use at military bases and airports; and that "[u]se of AFFF in New Jersey has discharged PFOS and other PFAS into New

Jersey's environment." *See* Compl. Ex. A, Statewide PFAS Directive ¶¶ 1, 45-46.

8.     Plaintiffs assert claims against all Defendants for negligence (*id.* ¶¶ 76-88), gross negligence and recklessness (*id.* ¶¶ 89-95), private nuisance (*id.* ¶¶ 96-100), public nuisance (*id.* ¶¶ 101-109), past and continuing trespass (*id.* ¶¶ 110-115), strict liability–abnormally dangerous activities (*id.* ¶¶ 116-130), strict liability–failure to warn (*id.* ¶¶ 131-141), strict liability–defective design (*id.* ¶¶ 142-153), and loss of consortium (*id.* ¶¶ 154-159).

## THE PROCEDURAL REQUIREMENTS FOR REMOVAL UNDER 28 U.S.C. §§ 1441 AND 1446 ARE MET.

9.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 110 and 1441(a) because the Superior Court of New Jersey, Bergen County, is located within the District of New Jersey.

10.     3M is not required to notify or obtain the consent of any other Defendant in this action in order to remove Plaintiffs' action as a whole under § 1442(a)(1). *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Hilbert v. McDonnell Douglas Corp.,* 529 F. Supp. 2d 187, 195 (D. Mass. 2008).

11.     Pursuant to 28 U.S.C. § 1446(a), true and correct copies of the Summons and Complaint are attached as Exhibit A. True and correct copies of all other documents on file in the state-court proceedings are attached as Exhibit B.

12.     3M was served with the Summons and Complaint on August 16, 2023. This Notice of Removal is timely filed in accordance with 28 U.S.C. § 1446(b).

13.     Pursuant to 28 U.S.C. § 1446(d), 3M is serving a copy of this Notice of Removal upon all other parties to this case and is also filing a copy with the Clerk of the Superior Court of New Jersey, Bergen County.

14.     By filing a Notice of Removal in this matter, 3M does not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person,

or venue; and 3M specifically reserves the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

15.    3M reserves the right to amend or supplement this Notice of Removal.

16.    If any question arises as to the propriety of the removal of this action, 3M requests the opportunity to present a brief and oral argument in support of removal.

## REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(a)(1).

17.    Removal here is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which provides for removal of an action relating to a defendant's acts undertaken at the direction of a federal officer. Removal is appropriate under this provision where the removing defendant establishes that: (a) it is a "person" within the meaning of the statute; (b) the plaintiff's claims are based on the defendant's conduct "acting under" the United States, its agencies, or officers; (c) the plaintiff's claims are "for or relating to" the defendant's acts under color of federal office; and (d) the defendant raises a colorable federal defense. *Papp*, 842 F.3d at 812; *accord Mesa v. California*, 489 U.S. 121, 124-25, 129-31, 133-35 (1989); *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014); *Isaacson*, 517 F.3d at 135; *Durham*, 445 F.3d at 1251.

18.    Removal rights under the federal officer removal statute are much broader than under the general removal statute, 28 U.S.C. § 1441(a). Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999). This is because § 1442(a)(1) protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011) (citation omitted). This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)."

*Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see Durham*, 445 F.3d at 1252. To the contrary, § 1442 as a whole must be "liberally construe[d]" in favor of removal. *Papp*, 842 F.3d at 812 (alterations in original) (internal quotation marks omitted).

19.     All requirements for removal under § 1442(a)(1) are satisfied where, as here, the notice of removal alleges that the Plaintiffs' injuries are caused at least in part by MilSpec AFFF. *See, e.g.*, *Nessel v. Chemguard, Inc.*, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021) (denying motion to remand and finding that federal officer removal was proper in a lawsuit against manufacturers of MilSpec AFFF); *Ayo v. 3M Co.*, 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) (same). The court overseeing the AFFF MDL has found on multiple occasions that removal under § 1442(a)(1) is proper where the notice of removal alleges that plaintiff's injuries are caused, at least in part, by MilSpec AFFF. *See In re AFFF Prods. Liab. Litig.*, 2019 WL 2807266, at *2-3 (D.S.C. May 24, 2019) ("MDL Order 1"); Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 320 (D.S.C. Sept. 27, 2019) ("MDL Order 2"), at 3-5; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 325 (D.S.C. Oct. 1, 2019) ("MDL Order 3"), at 3-6.  Given its experience with the claims and defenses in AFFF litigation, the MDL Court's holdings demonstrate that this case, too, has been properly removed to federal court.[1]

A.     **MilSpec AFFF**

20.     Since the late 1960s/early 1970s, the United States military has used MilSpec AFFF on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially devastating—to train its personnel, put out fires, save lives, and protect property. In fact, the United States Naval Research Laboratory developed AFFF—its researchers were granted the first AFFF

---

[1] Following removal, 3M intends to designate this action for transfer to the MDL.

patent in 1966.[2] Decades later, the Naval Research Laboratory described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[3] MilSpec AFFF is also widely used to fight fires at so-called "Part 139" civilian airports.[4]

21.    The design and manufacture of MilSpec AFFF are governed by rigorous military specifications created and administered by Naval Sea Systems Command, part of the Department of Defense ("DoD"). The applicable specification, Mil-F-24385, was first promulgated in 1969, and has been revised a number of times since then.[5] All MilSpec AFFF products must be "qualified for listing on the applicable Qualified Products List" prior to military procurement.[6] Prior to such listing, a "manufacturer's . . . products are examined, tested, and approved to be in conformance with specification requirements."[7] The MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements.[8] After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the

---

[2] U.S. Patent No. 3,258,423 (filed Sept. 4, 1963; published June 28, 1966).

[3] U.S. Navy, NRL/MR/1001-06-8951, U.S. Naval Research Lab., *The U.S. Naval Research Laboratory (1923-2005): Fulfilling the Roosevelts' Vision for American Naval Power*, at 37 (June 30, 2006) ("*Fulfilling the Roosevelts' Vision*"), https://permanent.fdlp.gov/gpo125428/roosevelts.pdf.

[4] *See, e.g.*, FAA Part 139 CertAlert 06-02, Aqueous Film Forming Foam (AFFF) meeting MIL-F-24385 (Feb. 8, 2006).

[5] The 1969 MilSpec and all its revisions and amendments through April 2020 are available at https://tinyurl.com/yxwotjpg.

[6] MIL-PRF-24385F(4) § 3.1 (2020).

[7] DoD SD-6, Provisions Governing Qualification at 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

[8] *See, e.g.*, MIL-PRF-24385F(4) at 18 (2020). The cited MilSpec designates Naval Sea Systems Command as the "Preparing Activity." The "Preparing Activity" is responsible for qualification. (*See* DoD SD-6, *supra* note 7, at 3.)

qualification status."[9] Naval Sea Systems Command "reserves the right to perform any of the [quality assurance] inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements."[10]

22.     From its inception until 2019, the MilSpec for AFFF included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants." All fluorocarbon surfactants are PFAS, and that category includes PFOA, PFOS, and their precursors—among the compounds expressly alleged to be at issue in the Complaint here.[11] The current MilSpec expressly contemplates the presence of PFOA and PFOS (subject to recently imposed limits) in AFFF formulations.[12] Indeed, the current MilSpec recognizes that it is not yet technically feasible for manufacturers to completely eliminate PFOA and PFOS "while still meeting all other military specification requirements."[13]

23.     MilSpec AFFF plausibly contributed to the alleged PFAS contamination that purportedly injured Plaintiffs. Specifically, MilSpec AFFF use at the Picatinny Arsenal and the Teterboro Airport plausibly contributed to the alleged contamination of Plaintiffs' drinking water. Plaintiffs allege that they were injured from PFAS in drinking water in, among other locations, the Boroughs of Hawthorne and Ho-Ho-Kus. *See* Compl. ¶¶ 69, 71, 78. Both the Borough of

---

[9] DoD SD-6, *supra* note 7, at 1.

[10] *See, e.g.*, MIL-PRF-24385F(4) § 4.1 (2020).

[11] *See* Mil-F-24385 § 3.2 (1969); MIL-PRF-24385F(2) § 3.2 (2017). In May 2019, the MilSpec was revised to drop the explicit requirement that the surfactants in the product be "fluorocarbon." *See* MIL-PRF-24385F(3) § 3.2 (2019). But under current technology, the only AFFF products capable of meeting the MilSpec's stringent performance requirements—and the only ones listed on the military's Qualified Product List—are those containing fluorocarbon surfactants. Thus, as a practical matter, the MilSpec still requires fluorocarbon surfactants.

[12] *See* MIL-PRF-24385F(4) § 6.6 & Tables 1, 3 (2020).

[13] MIL-PRF-24385F(4) § 6.6.

Hawthorne and the Borough of Ho-Ho-Kus have filed lawsuits against 3M and other of the Defendants that are pending in the AFFF MDL, and in those lawsuits, they allege that AFFF caused PFAS contamination of their water supplies.[14] Moreover, AFFF manufacturer defendants removed the Borough of Hawthorne's action to federal court pursuant to the federal officer removal statute based on allegations that MilSpec AFFF use at Picatinny Arsenal and Teterboro Airport contributed to the alleged PFAS contamination of the Borough of Hawthorne's water supply.[15] The Borough of Hawthorne did not oppose removal of its case to federal court based on those allegations, nor did it oppose transfer of the case to the AFFF MDL.

24.    As alleged in the Notice of Removal for *Borough of Hawthorne*,[16] Picatinny Arsenal is a military research and manufacturing facility in Morris County, New Jersey. The facility has used MilSpec AFFF for many years, and PFAS from MilSpec AFFF use has been carried offsite into the nearby Passaic River upstream of water intakes used by the Passaic Valley Water Commission ("PVWC"), and the Jersey City Municipal Utilities Authority ("Jersey City MUA"). The Jersey City MUA sells water to the PVWC, and the PVWC sells drinking water to the Borough of Hawthorne. Thus, MilSpec AFFF from the Picatinny Arsenal plausibly is a source of PFAS in the drinking water in the Borough of Hawthorne.

25.    As also alleged in the Notice of Removal for *Borough of Hawthorne*,[17] Teterboro Airport is a Part 139 airport in Bergen County, New Jersey. MilSpec AFFF has been used at

---

[14] *See* Amended Complaint ¶¶ 19-32, 54-57, 82, *The Borough of Hawthorne v. 3M Co., et al.*, No. 2:23-cv-02773 (D.S.C.), ECF No. 6; Complaint ¶¶ 5, 11-60, 77-101, 205-242, *The Borough of Ho-Ho-Kus v. 3M Co., et al.*, No. 2:23-cv-03191 (D.S.C.), ECF No. 1.

[15] *See* Notice of Removal ¶¶ 21-22, *The Borough of Hawthorne v. 3M Co., et al.*, No. 2:23-cv-02773 (D.S.C.), ECF No. 1.

[16] *Hawthorne* Notice of Removal ¶ 21, *supra* n.15.

[17] *Hawthorne* Notice of Removal ¶ 22, *supra* n.15.

9

Teterboro and has reached the groundwater at and around the airport. The groundwater underlying Teterboro is part of the Passaic Formation, also known as the Brunswick Aquifer, which is a water source for Veolia Water (formerly Suez Water) and other interconnected water departments in northern New Jersey. Veolia Water sells water to Jersey City MUA, which in turn sells water to PVWC, which in turn sells water to the Borough of Hawthorne. Thus, MilSpec AFFF used at Teterboro Airport is a likely source of PFAS in the drinking water in the Borough of Hawthorne.[18]

26.     Because Plaintiffs allege that their injuries have been caused by PFAS-containing water in the Borough of Hawthorne among other locations in New Jersey in proximity to the Picatinny Arsenal and Teterboro Airport, it follows that this action is properly removable under Section 1442(a)(1) for the same reasons the *Borough of Hawthorne* was removable under that provision.

27.     Additionally, Plaintiffs' Complaint attaches NJDEP's Statewide PFAS Directive which attributes PFAS contamination of drinking water supplies in New Jersey to the use of AFFF at military installations and airports. *See* Compl. Ex. A, Statewide PFAS Directive ¶¶ 1, 45-46.

28.     The circumstances here are similar to those in *Ridgewood Water*, which AFFF manufacturer defendants removed to federal court pursuant to Section 1442(a)(1) based on allegations that the alleged PFAS contamination of Ridgewood Water's drinking water supply plausibly had resulted at least in part from the use of MilSpec AFFF at the Teterboro Airport. *See* Notice of Removal, *Ridgewood Water v. 3M Co.*, No. 2:19-cv-02198 (D.S.C.), ECF No. 1. Ridgewood Water disputed those allegations, but after *Ridgewood Water* was transferred to the MDL, the MDL Court denied Ridgewood Water's motion to remand for lack of subject-matter

---

[18] The Borough of Ho-Ho-Kus also draws its water from the Brunswick Aquifer. *See* Borough of Ho-Ho-Kus Water Department, Quality on Tap Water (2023), https://www.hhkborough.com/sites/g/files/vyhlif6801/f/uploads/hoho2023ccr.pdf.

jurisdiction, holding that the removing defendants' allegations were sufficient to support removal. *See* MDL Order 3. 3M's averment that MilSpec AFFF use at the Picatinny Arsenal and the Teterboro Airport contributed to the alleged PFAS contamination of the water supplies that purportedly injured Plaintiffs are likewise sufficient to support removal of this action to federal court pursuant to Section 1442(a)(1).

**B.     All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied.**

        *1.     The "Person" Requirement Is Satisfied.*

29.     The first requirement for removal under the federal officer removal statute is satisfied here because 3M (a corporation) meets the definition of "persons" under the statute. For purposes of § 1442(a)(1), the term "person" includes "corporations." *Papp*, 842 F.3d at 812 (quoting 1 U.S.C. § 1); *accord Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010); *Isaacson*, 517 F.3d at 135-36.

        *2.     The "Acting Under" Requirement Is Satisfied.*

30.     The second requirement ("acting under" a federal officer) is satisfied when an entity assists or helps carry out the duties or tasks of a federal officer. *Papp*, 842 F.3d at 812. The phrase "acting under" is to be "liberally construed in favor of the entity seeking removal." *Sawyer*, 860 F.3d at 255 (internal quotation marks omitted). "[C]ourts have unhesitatingly treated the 'acting under' requirement as satisfied where a contractor seeks to remove a case involving injuries arising from equipment that it *manufactured for the government*." *Id.* (emphasis in original); *accord N.J. Dep't of Env't Prot.*, 2020 WL 2611539, at *3 ("Where [the] 'federal government uses a private corporation to achieve an end it would otherwise use its own ends to complete,' the corporation is deemed to be acting under the authority of the federal officer" (quoting *Papp*, 842 F.3d at 812)); *Albritton*, 2023 WL 2447422, at *4.

31.     The requirement of "acting under" a federal officer is met here because the alleged

PFAS contamination that is the focus of Plaintiffs' claims stems in part from MilSpec AFFF, a vital product provided by 3M that otherwise "the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137. MilSpec AFFF is a mission-critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself. *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission-critical" and "life-saving product" used by all branches of the U.S. armed forces and NATO members (internal quotation marks omitted)); *cf. Isaacson*, 517 F.3d at 137. The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations."[19] Accordingly, the military has long depended upon outside contractors like 3M to develop and supply AFFF. *See Nessel*, 2021 WL 744683, at *3 (holding that AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *Ayo*, 2018 WL 4781145, at *8-9 (same); *see also* MDL Order 1, 2019 WL 2807266, at *2 (finding that the "acting under" requirement was satisfied because defendant demonstrated that it was manufacturing AFFF under the guidance of the U.S. military); MDL Order 2, at 3-5 (holding likewise in case involving MilSpec AFFF used at Part 139 airport); MDL Order 3, at 3-6 (same). If 3M and other manufacturers did not provide MilSpec AFFF, the government would have to manufacture and supply the product itself.

32.    In designing and manufacturing the MilSpec AFFF at issue, 3M acted under the direction and control of one or more federal officers. Specifically, 3M acted in accordance with detailed specifications promulgated by Naval Sea Systems Command that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling. Further, the AFFF

---

[19] Fulfilling the Roosevelts' Vision, *supra* n.3, at 37.

12

products in question were subject to various tests by the U.S. Navy before and after being approved for use by the military and for inclusion on the Qualified Products List maintained by the DoD.[20]

### 3. The "Under Color Of Federal Office" Requirement Is Satisfied.

33. The third requirement, that the defendant's actions were taken "under color of federal office," requires a "nexus" between a plaintiff's claims and the defendant's acts undertaken at the direction of a federal officer. As with the "acting under" requirement, "[t]he hurdle erected by this requirement is quite low." *Isaacson*, 517 F.3d at 137. It is sufficient for a defendant to establish a connection or association between the lawsuit and the federal office. *See Sawyer*, 860 F.3d at 258 (explaining that 28 U.S.C. § 1442 permits removal of actions "for *or relating to* any act under color of [federal] office") (emphasis added); *Papp*, 842 F.3d at 813; *Isaacson*, 517 F.3d at 137-38 (explaining that it is sufficient if the act that allegedly caused or contributed to the plaintiff's injuries occurred while the defendant was performing its official duties); *see also Albritton*, 2023 WL 2447422, at *5 ("Congress revised the Officer Removal Statute in 2011 to 'broaden the universe of acts that enable Federal officers to remove [suits] to Federal Court,'" and accordingly it is "sufficient for there to be a 'connection' or 'association' between the act in question and the federal office" (quoting *Papp*, 842 F.3d at 813).[21]

34. Here, Plaintiffs' claims against 3M arise at least in part from alleged PFAS contamination attributable at least in part to MilSpec AFFF. *See supra* ¶¶ 23-28. The military specifications have expressly or implicitly required the use of PFAS in the product. As a result, Plaintiffs' claims against 3M are connected to its acts taken under color of federal office. *See Ayo*,

---

[20] *See* DoD SD-6, *supra* n.5, at 1.

[21] The "acting under" and "under color of" prongs overlap. Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht*, 2011 WL 5109532, at *5.

2018 WL 4781145, at *9 ("[T]here is evidence of a 'casual connection' between the use of PFCs

in AFFF and the design and manufacture of AFFF for the government."); MDL Order 1, 2019 WL

2807266, at *3 (element satisfied where "[Plaintiff]'s claims arise out of use of AFFF products . . .

for which the U.S. military imposes MilSpec standards."); MDL Order 2, at 5 (element satisfied

where AFFF products, "for which the military imposes MilSpec standards," were the alleged cause

of plaintiff's injuries); MDL Order 3, at 5-6 (same).

35.    It is irrelevant that Plaintiffs do not expressly contend that they have been injured

by MilSpec AFFF. Courts "credit Defendants' theory of the case when determining whether [the]

causal connection exists." *Isaacson*, 517 F.3d at 137; *see also Nessel*, 2021 WL 744683, at *3

(noting that "Plaintiffs cannot decide what defense Defendants might present"); *Albritton*, 2023

WL 2447422, at *7 (defendant's alleged conduct was for or relating to act under color of federal

office because defendant was "entitled to put forward an alternate theory of causation" related to

products manufactured for the federal government). As averred in this Notice of Removal,

Plaintiffs' alleged injuries arise at least in part from alleged exposure to MilSpec AFFF. Plaintiffs'

claims therefore are "for or relating to" 3M's actions under color of federal office, 28 U.S.C.

§ 1442(a)(1), and 3M was entitled to remove this case as a whole pursuant to § 1442(a)(1), *see,*

*e.g.*, *Bennett*, 607 F.3d at 1084 n.6 ("[S]ection 1442(a)(1) authorizes removal of the entire case

even if only one of the controversies it raises involves a federal officer or agency.").

### 4.    The "Colorable Federal Defense" Requirement Is Satisfied.

36.    The fourth requirement ("colorable federal defense") is satisfied by 3M's assertion

of the government contractor defense.

37.    At the removal stage, a defendant need only show that its government contractor

defense is colorable; that is, "that the defense was 'legitimate and [could] reasonably be asserted,

given the facts presented and the current law.'" *Papp*, 842 F.3d at 815 (alteration in original)

14

(citation omitted); *see also Albritton*, 2023 WL 2447422, at *7-8 (defendant "raised a colorable government contractor defense" because it "pointed to government contracts and specifications for chemicals alleged" in the complaint). "A defendant 'need not win his case before he can have it removed.'" *Papp*, 842 F.3d at 815 (quoting *Willingham*, 395 U.S. at 407); *see also Isaacson*, 517 F.3d at 139 ("To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." (citation omitted)); *O'Connell v. Foster Wheeler Energy Corp.*, 544 F. Supp. 2d 51, 54 (D. Mass. 2008) (upon removal, defendant must raise "colorable federal defense").  At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo*, 771 F.3d at 116; *see also Kraus v. Alcatel-Lucent*, No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage.  Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense." (internal citation omitted)). Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants."  *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783-84 (E.D. Pa. 2010). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (alteration in original) (citation omitted).

38.     Under the government contractor defense, the defendant is not liable for the design, manufacture, or warnings of equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the

supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512. 3M has satisfied these elements for purposes of removal.

39.     The requirement of "reasonably precise specifications" can be met by evidence showing either (a) that the government's participation in the design of the product "amount[ed] to more than a rubber stamping," or (b) that the government continued to purchase or use a product after the government became aware that the product contained the alleged defect. *Ramey v. Martin-Baker Aircraft Co. Ltd.*, 874 F.2d 946, 950 (4th Cir. 1989). Naval Sea Systems Command participated in the design of MilSpec AFFF, and its role was not a mere "rubber stamping." It created (and has updated) detailed specifications governing the product's formulation, performance, testing, storage, inspection, packaging, and labeling.[22] Those specifications are "reasonably precise," including in requiring the use of PFAS.[23] In addition, in the past and continuing to the present, the DoD has purchased and used MilSpec AFFF with awareness of the product's PFAS content and of the alleged risks associated with PFAS in the product. *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design.").

40.     With respect to the second requirement, 3M's products have appeared on the DoD

---

[22] *See* Mil-F-24385 (1969) and subsequent revisions and amendments, cited in note 5, *supra*.

[23] As noted earlier, until 2019 the specification expressly required that MilSpec AFFF contain "fluorocarbon surfactants," all of which are members of the PFAS family.  Even since that express requirement was removed from the specification, the use of PFAS has been implicitly mandated because PFAS-containing surfactants are the only kind that allow AFFF to meet the performance requirements of the specification.

Qualified Products List,[24] which could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec. *See Ayo*, 2018 WL 4781145, at \*13 ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); MDL Order 1, 2019 WL 2807266, at \*3 (finding that defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications").

41.     Regarding the third requirement, the U.S. government was sufficiently informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF. The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand. Indeed, it is clear that the United States has long understood that AFFF contains PFAS and may contain or break down into PFOS and/or PFOA, that AFFF constituents can migrate through the soil and potentially reach groundwater, and that it has been reported that this may raise environmental or human health issues.[25] For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from firefighting exercises are considered to have adverse effects environmentally."[26] In June 1991, the Air Force stated that past Air Force

---

[24] *See* MIL-F-24385 QPL/QPD History for Type 3 AFFF (Oct. 24, 2014); MIL-F-24385 QPL/QPD History for Type 6 AFFF (Oct. 24, 2014) (both available at *In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-02873 (D.S.C.), ECF No. 1969-24).

[25] *See, e.g.*, EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* 1-6 (Nov. 4, 2002).

[26] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), https://apps.dtic.mil/dtic/tr/

fire training activities resulted in "adverse environmental impact," including "soil contamination" and the "potential" for "groundwater contamination."[27] By no later than 2001, DoD was aware of data purportedly showing PFAS compounds in MilSpec AFFF to be "toxic" and "persistent."[28] In 2002, the United States Environmental Protection Agency issued a draft hazard assessment for PFOA, which reviewed in detail, among other data, human epidemiological studies and animal toxicology studies pertaining to alleged associations between PFOA and cancer.[29] More recently, in a November 2017 report to Congress, the DoD acknowledged the concerns raised by the EPA regarding PFOS and PFOA. Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires."[30] Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "surfactants,"[31] and recognizes that PFAS, including PFOS and PFOA, will be present (subject to recently imposed limits for PFOS and PFOA) in AFFF formulations.[32] *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design."); MDL Order 1, 2019 WL 2807266, at *3 ("As

---

fulltext/u2/a136612.pdf.

[27] USAF, Engineering Technical Letter ETL 91-4: Site Selection Criteria for Fire Protection Training Areas 2 (June 14, 1991).

[28] EPA Presentation on Activities/Issues on Fluorosurfactants, March 16, 2001 (available at *In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-02873 (D.S.C.), ECF No. 1971-2).

[29] *See* EPA, Revised Draft Hazard Assessment, *supra* n.25.

[30] DoD, *Aqueous Film Forming Foam Report to Congress* 1-2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.

[31] MIL-PRF-24385F(4) § 3.2 (2020).

[32] MIL-PRF-24385F(4) § 6.6 & Tables I, III; *see also* David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts* (Sept. 16, 2020), https://tinyurl.com/ty5ku8hp.

to whether [defendant] adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, [defendant] points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . .").

42.    At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks. *See In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht*, 2011 WL 5109532, at *5 ("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'" (citation omitted)). Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies. *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89-90; *see also Ayo*, 2018 WL 4781145, at *13.

43.    3M's use of PFAS in MilSpec AFFF was required by military specifications. By seeking to impose tort liability on 3M for alleged injuries to Plaintiffs that were caused in whole or in part by 3M's compliance with military specifications, Plaintiffs are attempting to use state tort law to attack design choices dictated by the military. The government contractor defense precludes such an attack. *See Boyle*, 487 U.S. at 509.

44.    In the AFFF MDL, the MDL court has found based on an extensive factual record that the government contractor defense asserted by 3M and other MilSpec AFFF manufacturers presents genuine issues of fact for trial. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2022 WL 4291357, at *12, 15 (D.S.C. Sept. 16, 2022). A defense that presents triable issues is by definition better than merely "colorable."

WHEREFORE, 3M hereby removes this action from the Superior Court of New Jersey, Bergen County, Law Division, to this Court.

Respectfully submitted,

Dated: September 15, 2023

*/s/ Michael C. Zogby*
Michael C. Zogby
Chanda A. Miller
Barnes & Thornburg LLP
67 E. Park Place, Suite 1000
Morristown, NJ 07960
Phone: (973) 775-6101
Email: michael.zogby@btlaw.com
Email: chanda.miller@btlaw.com

Andrew J. Calica (*p.h.v. application forthcoming*)
Mayer Brown LLP
1221 Avenue of the America
New York, NY 10020
Phone: (212) 506-2256
Email: acalica@mayerbrown.com

*Attorneys for Defendant 3M Company*

20

## CERTIFICATE OF SERVICE

I hereby certify that, on September 15, 2023, I caused a true and correct copy of the foregoing to be served on the following parties by First Class Mail as indicated below:

By Mail:

Steven Phillips
Victoria Phillips
Melissa Stewart
Russell J. Curley
PHILLIPS & PAOLICELLI, LLP
Quakerbridge Executive Center
101 Grovers Mill Road
Lawrenceville, New Jersey 08648

Kevin Conway
COONEY & CONWAY
120 N. Lasalle Street, Suite 3000
Chicago, Illinois 60602

Peter Kraus
Charles Siegel
Michael Connett
WATERS KRAUS & PAUL
3141 Hood Street, Suite 200
Dallas, Texas 75219

*Attorneys for Plaintiffs*

E.I. DuPont de Nemours & Company, c/o C T Corporation System
820 Bear Tavern Road
West Trenton, NJ 08628

*Defendant*

The Chemours Company, c/o C T Corporation System
820 Bear Tavern Road
West Trenton, NJ 08628

*Defendant*

1

The Chemours Company FC, LLC, c/o C T Corporation System
820 Bear Tavern Road
West Trenton, NJ 08628

*Defendant*

ACG Chemicals Americas, Inc. c/o AGC Americas
55 E. Uwchlan Avenue, Suite 201
Exton, PA 19341

*Defendant*

BASF Corporation c/o BASF
100 Park Avenue
Florham Park, NJ 07932

*Defendant*

Asahi Kasei America, Inc.
800 Third Ave
New York, NY 10022

*Defendant*


Dated: September 15, 2023                    */s/ Michael C. Zogby*
                                             Michael C. Zogby

2